**In Re Anonymous 72 D.B. 81**

Disciplinary Board Docket no. 72 D.B. 81.

McDONNELL, *Member,* September 14, 1982—Respondent, [ ], Esq., was admitted to practice law in the Commonwealth of Pennsylvania on February 26, 1973.

On December 19, 1981, a petition for discipline was filed charging respondent with violating the Disciplinary Rules of the Code of Professional Responsibility as follows:

1. D.R.1-102(A)(3), prohibiting illegal conduct involving moral turpitude;

2. D.R.1-102(A)(4), prohibiting conduct involving dishonesty, fraud, deceit or misrepresentation;

3. D.R.1-102(A)(5), prohibiting conduct prejudicial to the administration of justice;

4. D.R.1-102(A)(6), prohibiting conduct that adversely reflects on fitness to practice law;

5. D.R.2-106(A), prohibiting the charging of an illegal or clearly excessive fee.

After a hearing was held, the hearing committee [ ] found that respondent had violated all of the above Disciplinary Rules with the exception of D.R.1-102(A)(3); that is, conduct involving moral turpitude. The hearing committee recommended public censure.

The pertinent facts are as follows:

On or about September 12, 1980, respondent was retained by [A] to represent him in defense of criminal charges of driving under the influence of alcohol. The agreed upon fee for respondent to represent the client at the preliminary hearing was $75. During the initial meeting with respondent, he explained to the client the various possibilities that could take place after the preliminary hearing, one of which was the Accelerated Rehabilitative Dispo-

sition (ARD Program). After the hearing, respondent obtained leave from the district magistrate to file a memorandum of law on his client's behalf. The client agreed to pay respondent $50 for the said memorandum. Thereafter, the magistrate filed his decision and held the client over for court action on the charge.

Thereafter, the client was notified by the district attorney's office that he was to appear in court to be arraigned on the said charge. The client appeared without counsel at the arraignment and asked the district attorney's office about the ARD program. He was informed that he did not need a lawyer in order to qualify for that program and the client filled out the necessary papers himself. A letter dated January 19, 1981 was sent to the client, with a copy to respondent, telling him that he had been accepted into the ARD program and that a hearing would be held on February 20, 1981. Upon receiving a copy of this letter, respondent called the client and told him that he wanted a total of $450 to represent him from the time of the preliminary hearing through the ARD hearing. The client told him that he did not want him to represent him, and that he was told by the district attorney's office that he did not need a lawyer. The respondent then told the client his fee would be $350. Thereafter, respondent called the district attorney's office and asked them to pull the client's file since he had not completed his fee arrangement with respondent. The district attorney's office did pull the client's file and on the appointed day of February 20, 1981, the client appeared for his ARD hearing and was told that it would not take place. The client told the district attorney's office that respondent was no longer representing him and that he wanted his hearing. He was given his ARD hearing and placed

in the program. For his representation, respondent was paid a total of $90 by the client.

From the evidence, there appears to be no question but that respondent did, in fact, attempt to collect a fee of $450 (subsequently reduced to $350) for his representation of the client. It is also clear that respondent requested the then deputy district attorney to pull the client's file at the time of the ARD hearing in order that the fee dispute could be resolved. This is a case of over-reaching by respondent in a matter concerning his client. Respondent did, in fact, prepare and consult with his client and then attended the preliminary hearing after which he submitted a brief. Respondent testified that he had discussed with his client the possibility of the ARD even before the preliminary hearing took place. Respondent testified that it was his intention to see the matter through either by way of trial or the ARD program, and that, in his opinion, the sum of $450 would be reasonable. However, the problem arose when the client did not hire respondent to do anything further for him after the preliminary hearing. The record indicates that the client went himself to his arraignment and that he then arranged with the district attorney's office to fill out the necessary papers for the ARD hearing and to represent himself at that time. Respondent's involvement came about when he received a copy of a letter from the district attorney's office informing the client that a date had been set for his ARD hearing. Upon receiving this notice, respondent contacted the client and told him that he wanted $450 for representing him through the ARD hearing. The client informed respondent that he did not want him to represent him at the ARD hearing and that $450 was an excessive charge. Respondent then said he would settle for $350. When respon-

dent did not receive the total of $350 before the scheduled ARD hearing, he then called the district attorney's office and asked them to pull the file since he was having a fee dispute with the client. The district attorney's office did, in fact, pull the file, but reinstated the hearing when the client appeared at the scheduled hearing and said that he wanted his hearing and did not want respondent to represent him. Respondent testified that he thought the $350 fee was fair for the work that he had done in preparing for the preliminary hearing, going to the preliminary hearing and submitting a brief thereafter. However, the evidence does not indicate that he quoted that fee to the client at the time of the preliminary hearing. All of the evidence indicates respondent thought that he would be representing the client through the whole procedure. However, the client decided when he was notified of his arraignment to represent himself and did not contact respondent any further. For respondent to then try to collect a fee when he was not engaged to represent the client any further, was in violation of the rules. Also, his asking the district attorney to pull the file so that the client's hearing would not take place was an interference with the judicial process.

Because of these violations, the committee recommended a public censure. With this discipline, the board cannot agree. Respondent had one prior disciplinary infraction for which he received an informal admonition on July 16, 1981. However, considering that respondent has been practicing law for about nine years and considering the nature of this violation, the public censure would appear to be too severe. Here respondent actually received a total of $90 for his work before, during and after the preliminary hearing. He did not, in fact, take any

more of the client's money. It is the board's opinion that a more proper discipline would be a private reprimand. Therefore, respondent should be given a private reprimand and pay the cost incurred herein.

Board Member Daniels dissents and would recommend a public censure.

### ORDER

JOHNSON, *Chairman,* And now August 25, 1982, the report and recommendation of hearing committee [ ] dated July 8, 1982 is rejected; and it is ordered and decreed, that the said [Respondent] of [ ] County, be subjected to a private reprimand by the Disciplinary Board of the Supreme Court of Pennsylvania as provided in Rule 204(5) of the Pennsylvania Rules of Disciplinary Enforcement at the next session of this board. Costs to be paid by the respondent.